MaddeN, Judge,
delivered the opinion of the court:
The plaintiffs, twenty-six in number, bring this suit claiming that their pay as employees of the United States Naval Shipyard in Brooklyn, New York was illegally reduced.
For some time prior to 1956 the plaintiffs and numerous other persons, a total of 127, were employed in the shipyard with the classification and pay of Toolroom Mechanics. The Civil Service Commision authorized the Office of Industrial Relations of the Navy to establish a new rating of Toolroom Attendant. That Office established the rating on June 29, 1955, and the shipyard requested and received authority to use it. That rating was to cover positions not requiring the skill of a mechanic. The Commandant of the Brooklyn Shipyard advised the Chief, Bureau of Ships, that 90 of the 127 employees rated as Toolroom Mechanics were performing the duties of Toolroom Attendants.
We suppose that what the Commandant meant was that if only 37 of the toolroom employees were available to do mechanics’ work, that would be enough to satisfy the needs of the shipyard, and the other 90 employees could be limited to the work of attendants. We say this because all of the 127 employees must have been qualified to do the work of mechanics, since the selection of the 37 who were to keep the rating of mechanics was made strictly on the basis of their status on the retention register.
The Chief of the Bureau of Ships directed the shipyard to abolish 90 positions of Toolroom Mechanics, and to use the applicable Reduction in Force (R.I.F.) procedure to accomplish this result. On February 14,1956, R.I.F. notices were issued to 90 off the employees, including the 26 instant plaintiffs. The notices advised the employees of the reason for the action, and said that their last day on active duty and the effective date of their separation, would be March 16, 1956. As we have said, the selection of the 37 employees to be retained as Toolroom Mechanics, and of the 90 to be *447 separated, was made strictly on the basis of the position which, each employee had on the retention register. All of the 37 employees who were not given R.I.F. notices were veterans, as were 52 of the 90 who received notices. All.of the instant plaintiffs were veterans.
The separation date given in the notices was March 16. On February 23, the shipyard gave to each of the plaintiffs, and presumably to each of the 90 employees who had received R.I.F. notices a week before that date, an “Offer of reassignment in lieu of separation in reduction-in-force action.” Each employee was offered a reassignment to the lower grade position of Toolroom Attendant, effective March 19, 1966. Each employee was advised that if he did not accept the offer, his separation would be effected as provided in his K..I.F. notice. Most of the 90 employees, including all of the plaintiffs, accepted the offer of reassignment, some of them noting that they did so under protest.
The plaintiffs promptly appealed to the Regional Office of the Civil Service Commission. They said that the reduction-in-force procedures, prescribed in section 12 of the Veterans’ Preference Act of 1944, 58 Stat. 390, 5 U.S.C. § 861, which procedures the shipyard had used, were not the properly applicable procedures. They said that section 14 of the Veterans’ Preference Act, 5 U.S.C. § 863, should have been used. Section 14 provides that no veterans’ preference eligible shall be discharged, or reduced in rank or pay except for such cause as will promote the efficiency of the service; that he shall have at least 30 days’ advance written notice stating in detail the reasons for the proposed adverse action; that he shall have the right to answer the notice personally and in writing and to appeal to the Civil Service Commission from adverse action; and that the decision of the Civil Service Commission on his appeal shall be mandatory upon the agency which employed him.
Section 12, the procedures of which were actually used in the instant case, merely says that in a reduction-in-force competing employees shall be released in accordance with Civil Service regulations which shall give due effect to tenure of employment, military preference, length of serv *448 ice, and efficiency ratings. Civil Service Regulations section 20.2(a), as it was in 1956, provided:
“Reduction in force” means the involuntary separation from the rolls of a department, or furlough in excess of thirty days, of one or more employees in order to reduce personnel. Reduction of personnel may have to be made because of lack of funds, personnel ceilings, reorganization, decrease of work, to make a position available for a former employee with established reemployment or restoration rights, or for other reasons. However, the term does not apply to (1) termination of temporary appointment limited to one year or less, (2) retirement of employees, or (3) separations for unsatisfactory service.
The Civil Service Regional Office decided that the reduction-in-force procedure was the properly applicable one, and that the plaintiffs’ appeal had no merit. The plaintiffs appealed to the Board of Appeals and Review of the Civil Service Commission, which held that the appeal should be sustained; that the reduction-in-force procedure was not the properly applicable one; that the section 14 procedure should have been followed. The Board on January 18, 1957, directed the shipyard to restore the plaintiffs to the rating and pay of Toolroom Mechanics within 10 days of the receipt of the Board’s letter announcing its decision. Within the 10 days the Department of the Navy telephoned the Board of Appeals and Review that the Navy would request reconsideration by the Civil Service Commission of the Board’s decision, and that pending this action the Navy would not take the action directed by the Board’s decision. The executive officer of the Board acquiesced in that proposed procedure. On January 29, eleven days after the Board’s decision, the Navy formally requested the Civil Service Commission to reconsider the Board’s decision. On June 12, 1957, the Commission reopened the case and gave the parties the right to file briefs. On December 31, 1957, the Commission held that the shipyard’s action constituted a reduction in personnel within the meaning of section 12, and that the procedures which the shipyard followed were proper. The plaintiffs’ appeal was denied and the instant suit was filed.
*449 The defendant has filed a motion for a summary judgment. The plaintiffs urge that there are material issues of fact which must be resolved before the case can be decided, and that the defendant’s motion should be denied so that the case can go to trial. We think there is no material contest between the parties as to the facts in the case, and that a trial would be useless and wasteful of time and energy.
The reduction-in-force procedure prescribed in section 12 and in the applicable Civil Service Regulation fits the instant situation quite exactly. There were 127 employees holding the rating and receiving the pay of Toolroom Mechanics. A review of the situation by the responsible authorities resulted in a decision that only 37 employees were needed to do that work. That being the case, of course 127 men should not be assigned to that work and receive the pay of that assignment. What was needed was a reduction of the number of Toolroom Mechanics, and section 12 was the prescribed procedure to accomplish that result. The 90 employees who were to be separated from the rating were selected in strict accordance with the statute, the applicable regulations, and the information appearing on the retention register.
The plaintiffs urge that the fact that they were rehired in the rating of Toolroom Attendants, and therefore were never actually separated from the payroll, shows that the reduction-in-force procedure was not the proper one. The argument is not valid. They were notified on February 14 that they were to be separated on March 16. A week after February 14 they were offered positions at the lower rating in which there were to be available positions. If they had not accepted those positions, they would have been separated on March 16. The fact that employees notified of proposed separation by a reduction in force from a particular type of job which is being abolished, or in which the number of employees is being reduced, are offered other and different jobs, and accept them, before their proposed separation becomes effective, does not change the character of their proposed separation. We suppose that in every case of a reduction in force every effort is made to find other positions for the employees, both before and after their actual separation.
*450 The provisions of section 14 of the Veterans’ Preference Act, which the plaintiffs say should have been followed, do not fit the instant situation. To have advised any one of the plaintiffs that it was proposed to separate him “to promote the efficiency of the service”, and then go on to advise him of the reasons why his discharge would accomplish that result, wmuld be an anomalous performance. The only reason that could be given to him would be the reason given in the E..I.F. notices given the plaintiffs in the instant case, viz., that there would be more men than jobs in the rating which he held, when the reclassification of the jobs would be put into effect. It would 'be just as logical to say that if the whole shipyard was to be closed down, each employee should be advised wherein it would promote the efficiency of the service if he were discharged, and should be advised “specifically and in detail” as to why it had been decided to close down the shipyard, and should be allowed to give his views “personally and in writing” on that subject. Congress, when it wrote section 12, did not suppose that every separation was covered by the provisions of section 14.[1]
After the oral argument in this case, the plaintiffs requested and were granted permission to file affidavits and other exhibits in support of their opposition to the Government’s motion for summary judgment. The affidavits show that the plaintiffs did substantially the same kind of work after the reclassification of the jobs as they had done before. This would seem to have been entirely consistent with the purpose of the reclassification of the jobs. The decision of the Navy was that the jobs were rated too high for the work that the employees were, for the most part, actually doing. The-work that they were-actually doing was still there to be done, after the- reclassification of the jobs, as before. • We cannot, of course, review the judgment of the Navy as to whether a job should be rated as that of Toolroom Mechanic or Toolroom Attendant. If, in fact, the plaintiffs or any of them are being required to do the work now classified as that of Toolroom Mechanic, but are being paid only the *451 wages of Toolroom Attendants, there are certainly available administrative procedures to correct such an injustice.
The affidavits and exhibits filed by the plaintiffs do not create a substantial issue of fact.
The defendant’s motion for summary judgment is granted, and the plaintiffs’ petition is dismissed.
It is so ordered.
LittletoN, Judge (Bet.'); Laeamoue, Judge; Whitakeb, Judge, and Jones, Chief Judge, concur.

 Parks v. United States, 137 Ct. Cl. 297; Adler v. United States, 129 Ct. Cl. 150 ; Schweizer v. United States, 128 Ct. Cl. 456.