This civilian pay case comes before the court on defendant’s motion for summary judgment. After considering the motion, without oral argument, the court concludes that there is no genuine issue as to any material fact, and the defendant is entitled to judgment as a matter of law.
Plaintiffs, former and present civilian employees of the Navy’s Military Sealift Command (Sealift Command), are suing to recover subsistence and quarters pay for the period that they were assigned to the U.S.N.S. Mis-sissinewa. At that time, the Mississinewa was in its home port undergoing alterations and had been placed in Ready Reserve Status (RRS). Plaintiffs contend that the ship should have been placed in Full Operational Status (FOS) Bravo, in which event they would have been entitled to subsistence and quarters pay. The only issue is whether the Sealift Command properly interpreted its own regulations in placing the Mississinewa in RRS. In reviewing the Command’s interpretation we bear in mind that "the *676 construction given to a law or regulation by those responsible for carrying it out is entitled to great weight and ought not to be overruled without good reasons and unless plainly erroneous.” Barrington Manor Apartments v. United States, 198 Ct. Cl. 298, 304, 459 F.2d 499, 502-03 (1972), citing Harris v. United States, 153 Ct. Cl. 425, 431 (1961).
On November 15, 1976, the Mississinewa was decommissioned as a naval vessel and placed under the control of the commander of the Sealift Command at its home port. The crew’s living quarters were to be altered in preparation for manning of the vessel by a civilian crew. Sealift Command regulations require that all of its vessels be placed in one of four categories: FOS Alpha, FOS Bravo, RRS, or Inactivated Status. Broadly speaking, the first two categories are for "active” ships, and the last category is for ships that are not manned and are not in use. Ships in RRS are those which are being prepared for future active service, but which are not active and have no "immediate schedule of operations.”
At the time the Mississinewa became a Sealift Command ship, the Command was required to place the vessel in one of those four categories. Plaintiffs contend that because the Mississinewa was scheduled to undergo substantial alterations in preparation for a significant change of duty, the Sealift Command was required to place the ship in FOS Bravo. Defendant asserts, however, that because the ship had just been transferred from military to civilian command, its status was ambiguous, and the Sealift Command reasonably interpreted its own regulations in placing the ship in RRS.
Under Sealift Command regulations, a ship in FOS Bravo is "one that is active and is in a major repair period or overhaul of sufficient duration to warrant substantial reduction of the crew.” comsc instruction 3120.8B.5a(2). The Mississinewa did not fit within that description because, although the ship was undergoing alterations in preparation for manning by a civilian crew, it was not "active.” Plaintiffs argue, however, that because the ship did not come within the definitions of RRS, the Sealift Command was required to place the Mississinewa in FOS Bravo. It is true that none of the three basic definitions of a *677 ship in RRS accurately described the status of the Mississinewa at the time it came under the Sealift Command. The reason was that the Mississinewa, having been a military ship, was not under Sealift Command regulations before November 15, 1976. The ship was not "withdrawn from FOS because of decreased operational requirements” because it had never been in FOS; the vessel was not being "held for contingencies and emergencies,” but was being prepared for occupancy by a civilian crew; the ship was not being "upgraded in readiness posture from inactivated status” because it had never been in inactivated status under the Sealift Command, comsc instruction 3120.8B.5b.
The Mississinewa thus did not fit squarely within the definitional requirements for either FOS Bravo or RRS. The Sealift Command was therefore required to decide which status more accurately described the ship on November 15, 1976. The Sealift Command placed the Mississinewa in RRS because it was "[a] ship for which no immediate schedule of operations exist[ed],” (see Civilian Marine Personnel Instruction 512.2-l(n)), since the earliest scheduled operation was a tentative voyage to Norfolk, Virginia, in October 1977. Given the ambiguous status of the ship under Sealift Command regulations, we cannot say that this decision was "plainly erroneous.” Sealift Command reasonably determined that the Mississinewa more closely resembled a ship in RRS than one in FOS Bravo, especially since the latter required that the ship be "active.” As there was no improper classification, plaintiffs are not entitled to subsistence and quarters pay for the period that the Mississinewa was in RRS.
it is therefore ordered that defendant’s motion for summary judgment be granted. The petition is dismissed.